IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

RICHARD CLEVELAND,

    Plaintiff,

v.

LATOYA J. HUGHES,

    Defendant.

Case No. 22-cv-456-NJR

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

    Plaintiff Richard Cleveland, an inmate of the Illinois Department of Corrections who is currently incarcerated at Pinckneyville Correctional Center, brings this action for violations of his rights pursuant to 42 U.S.C. § 1983. Cleveland was allowed to proceed on one count against Latoya J. Hughes, in her official capacity only, pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act ("RA"), 29 U.S.C. §§ 794–94e, for his lack of access to a typewriter (Docs. 1, 12).

    This matter is currently before the Court on Defendant Hughes's motion for summary judgment (Docs. 52, 53). Hughes argues that Cleveland failed to exhaust his administrative remedies prior to filing suit. Cleveland opposes the motion (Doc. 56).

## Factual Background

    On March 7, 2022, Cleveland filed his Complaint alleging various constitutional violations stemming from the medical care he received for his atrophied hand and his

need for a typewriter, in light of his disability. After a review of the Complaint pursuant to 28 U.S.C. § 1915A, Cleveland was allowed to proceed on the following count:

> Count 2:    ADA and/or RA claim against Latoya Hughes for failing to provide Cleveland with 24/7 access to a typewriter in light of his atrophied hand.

(Doc. 12, p. 5).[1]

Cleveland's Complaint alleged that he was a disabled individual and confined to a wheelchair (Doc. 12, p. 2). Beginning in February 2020, he began experiencing pain and numbness in his right hand and wrist (*Id*.). The hand condition left his hand weak. As a result, Cleveland believed that he needed additional assistance to write, and on October 1, 2021, he submitted a grievance requesting 24/7 access to a typewriter (*Id*.). He spoke to prison officials about his desire to write letters to family, attend college classes, and type his autobiography (*Id*. at pp. 2-3). Although he was assigned an ADA attendant, he was denied his request for a typewriter. Prison officials told him that he did not need a typewriter, but he could seek assistance in writing from the library or his ADA attendant. Cleveland believed that he was entitled to a typewriter pursuant to the ADA (*Id*. at p. 3).

Cleveland submitted two grievances regarding his access to a typewriter:

---

[1] Count 1, alleging deliberate indifference in the treatment of Cleveland's atrophied hand, was dismissed without prejudice for failure to state a claim. Cleveland also sought to allege an ADA and/or RA claim against Percy Myers, Bob Blum, Christine Brown, Crystal Crow, and David Mitchell, but all of the individual defendants were dismissed because officials cannot be sued in their individual capacities pursuant to the ADA (Doc. 12, p. 6). Cleveland was allowed to proceed against Rob Jeffreys, in his official capacity only (*Id*. at pp. 6-7). Latoya Hughes was later substituted in place of Rob Jeffreys as the current director of the Illinois Department of Corrections (Doc. 48).

**October 1, 2021 Grievance:** Cleveland first submitted an emergency grievance requesting a typewriter (Doc. 53-3, pp. 28-29). His grievance stated that he had a disability but that the ADA Coordinator and Assistant Warden refused to provide him with reasonable accommodations, to include a typewriter or word processor permanently placed in his cell (*Id*. at p. 28). Cleveland had reported to prison officials that he would like to attend college, write to family, and continue writing his autobiography, but he was unable to do so by hand due to atrophy in his right hand and wrist (*Id*. at pp. 28-29). Instead of providing Cleveland with a typewriter, he was instructed to request help from his cellmates (*Id*. at p. 29). On October 12, 2021, the warden marked the grievance as an emergency and expedited its review (*Id*. at p. 28). On November 30, 2021, the grievance officer reviewed Cleveland's grievance (*Id*. at p. 26). The grievance officer also obtained a response from the prison's ADA Coordinator. The coordinator indicated that Cleveland received physical therapy and evaluations for his pain, and he was still unable to move his arm or hand (*Id*. at p. 27). The coordinator determined that a typewriter would not benefit Cleveland because he could not move his hand, although she noted that she did not speak with him about his request, nor was she initially aware of his request (*Id*.). Instead, Cleveland was instructed to request help from assistants in the library or from his ADA attendant, because writing was part of their job assignments (*Id*.). The grievance officer recommended denial of Cleveland's grievance, and the chief administrative officer concurred with the response (*Id*. at p. 26). There is no evidence that Cleveland appealed the grievance to the Administrative Review Board ("ARB") (Doc. 53-1).

**December 14, 2021 Grievance**: Cleveland submitted a second grievance regarding has access to ADA accommodations on December 14, 2021 (Doc. 53-3, p. 10). This grievance was not marked as an emergency but submitted to his counselor. He again complained that he needed access to a typewriter due to the limited function in his right arm (*Id*.). He noted that officials had previously told him that law library personnel can help him, but Cleveland complained that nothing required inmate workers to help him with typing. He made several requests to the law library supervisor for an ADA accommodation without success. Cleveland took issue with the previous grievance response that he could ask the law library or an ADA attendant for help. He noted that he wanted to write his private, personal autobiography and thus could not rely on inmate helpers (*Id*. at p. 11). Cleveland again requested a typewriter (*Id*. at p. 10). On January 13, 2022, Cleveland's counselor rejected the grievance because Cleveland failed to include any dates in the grievance (*Id*. at p. 10). There is no record of the grievance being appealed to either the grievance officer or the ARB.

3

In response to Hughes's summary judgment motion, Cleveland filed a response acknowledging that his grievances were not fully exhausted (Doc. 56). Instead, Cleveland argued that due to the deterioration of his right hand, he was not able to write the grievances. He relied on the help of other inmates to submit his grievances. Cleveland specifically stated that he relied on fellow inmate John M. Ruffin (*Id*. at p. 2). Cleveland submitted his grievances and legal documents to Ruffin and relied on Ruffin to properly handle and submit the grievances to the proper authorities, including the ARB (*Id*. at p. 2). Cleveland argued that the failure to exhaust his grievances was through no fault of his own because he relied on Ruffin to exhaust the grievances (*Id*.). Cleveland also referred to an affidavit from Ruffin, attached to his motion. The affidavit from inmate John M. Ruffin states that Cleveland asked Ruffin to help draft his motion for appointment of counsel, motion for leave to file an amended complaint, proposed amended complaint, and motion for class action certification in this case (Doc. 56, p. 4).

## LEGAL STANDARDS

Summary judgment is proper if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). 42 U.S.C. §1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

*Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that '[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.* Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2005). Consequently, if a prisoner fails to properly utilize a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809.

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-41(7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Seventh Circuit set forth the following recommendations:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the

5

>prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

### A. Illinois Exhaustion Requirements

As an IDOC inmate, Cleveland was required to follow the regulations contained in IDOC's Grievance Procedures for Offenders ("grievance procedures") to properly exhaust his claims. 20 Ill. Administrative Code §504.800 *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. 20 Ill. Admin. Code §504.810(a). The grievance form must:

>contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 Ill. Admin. Code §504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. 20 Ill. Admin. Code §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. 20 Ill. Admin. Code §504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer ["CAO"] within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 Ill. Admin. Code §504.830(e). "The Chief

Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing." *Id.*

If the inmate is not satisfied with the CAO's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 Ill. Admin. Code §504.850(a). The inmate shall attach copies of the Grievance Officer's report and the CAO's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 Ill. Admin. Code §504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within six months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 Ill. Admin. Code §504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. In order to file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 Ill. Admin. Code §504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what

action shall be taken. 20 Ill. Admin. Code §504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 Ill. Admin. Code §504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 Ill. Admin. Code §504.850(f).

## ANALYSIS

Simply put, Cleveland failed to fully exhaust his administrative remedies.[2] He received a response to his October 2021 emergency grievance from Pinckneyville grievance officials, but Cleveland neglected to submit the grievance to the ARB. Similarly, he received a response to his December 2021 grievance from his counselor, but failed to further pursue the grievance either at the institutional level or with the ARB. Neither grievance was fully exhausted.

Cleveland does not deny that the grievances were not fully exhausted. Instead, Cleveland argues that it was not his fault that he failed to fully exhaust his grievances because he relied on the help of fellow inmate John Ruffin. Cleveland argues that he relied on Ruffin to properly submit his grievances. In other words, any failure to exhaust the grievances at both the prison and the ARB were the fault of Ruffin. Although Ruffin submitted an affidavit in support of Cleveland's motion, the affidavit does not suggest

---

[2] Because there are no disputes of material fact, the Court finds it unnecessary to hold an evidentiary hearing pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008).

that Ruffin handled Cleveland's grievances. Instead, the affidavit, dated October 21, 2022, states that Ruffin helped Cleveland draft his motion for counsel, motion to amend his complaint along with his proposed amended complaint, and his motion for class action certification (Doc. 56, p. 4). The affidavit does not indicate that Ruffin drafted any grievances on Cleveland's behalf. Further, Cleveland's October 1, 2021 grievance indicates that it was written by Marc Norfleet, with Cleveland's permission (Doc. 53-3, p. 29). Thus, Cleveland's own evidence refutes his argument that he relied on Ruffin to pursue his grievances.

Even if another inmate drafted Cleveland's grievances, it was still Cleveland's responsibility to submit the grievance to the proper officials. The grievance responses clearly instruct Cleveland as to the next steps in the grievance process, including submitting the grievance to the grievance officer and, ultimately, the ARB. Further, there is no evidence to suggest that Cleveland was incapable of submitting the grievance to the proper officials. Although he argues that he allowed another inmate to draft his grievances, he does not argue that he was unable to submit the grievances or keep track of the grievances on his own. Further, the regulations provide for staff assistance for those inmates who are not able to prepare their own grievances, upon request. *See* 20 Ill. Admin. Code 504.810(d). But nothing in the record or Cleveland's response indicates that he requested assistance or that he was unable to submit the grievances to the proper authorities. In fact, his grievance records show that Cleveland exhausted several grievances submitted during the same timeframe (Doc. 53-1, pp. 3-15). The records indicate that Cleveland was capable of pursuing grievances; he simply failed to further

9

pursue his grievances related to his ADA claim. Thus, Cleveland failed to exhaust his claims regarding his request for a typewriter.

## CONCLUSION

For the reasons stated above, the motion for summary judgment (Docs. 52, 53) is **GRANTED**. Cleveland's Complaint is **DISMISSED without prejudice**. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED: May 17, 2024

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**